TRENDINO J. PETRARCA *vs.* STATE OF RHODE ISLAND.

APRIL 30, 1963.

PRESENT: Condon, C. J., Roberts, Paolino and Powers, JJ.

POWERS, J.  This is a petition for mandamus praying, in the alternative, that the state controller be ordered to issue his warrant on the general treasurer requiring the latter to pay to the petitioner the emoluments to which a member of the state police, holding the rank of lieutenant, is entitled on retirement, or otherwise show cause why the same should

not be ordered. Charles W. Hill and Raymond H. Hawksley in their official capacities as state controller and general treasurer, respectively, being the true respondents in the cause, we shall refer to them throughout as the respondents. After a hearing in the superior court a justice thereof entered an order against the respondents as prayed and the cause is before us on their appeal from said final judgment.

The record establishes that petitioner became a member of the state police on June 5, 1940 and was in due time promoted to the rank of lieutenant. While holding that rank, and serving as commanding officer of the Hope Valley barracks, petitioner, on the evening of Saturday, July 16, 1960, driving a state police cruiser, left his post and drove to the island of Aquidneck by way of the Jamestown ferry.

It further appears that petitioner first went to the headquarters of the secret service officers attached to President Eisenhower, who was vacationing in Newport, and from there to a carnival in Portsmouth where he visited with friends and town officials. Shortly after midnight petitioner started back for Hope Valley, leaving Portsmouth by way of the Mount Hope bridge where he incorrectly identified the car he was driving to the bridge attendant, and arrived back at the barracks at or about 1:30 a.m.

During the hearing respondents adduced testimony from several witnesses to the effect that petitioner made repeated efforts to conceal his identity, some of which he denied. In the view of the proceedings taken by the trial justice and in which we concur, he determined that the truth of the matter was immaterial.

In any event, when asked by his superior Captain Harold T. McGovern to report on his activities, petitioner submitted a report on Sunday, July 17, 1960, in which he claimed not to have left the Hope Valley area, completely concealing the fact of his trip to Newport and Portsmouth. As it did not conform to information in the possession of the state police superintendent, Captain McGovern and Major Har-

rie C. Gill, acting on the instructions of the superintendent, called on petitioner the following day at the Hope Valley barracks, relieved him of his command and advised him that he was suspended pending hearing on charges. Sometime on Monday, July 18, petitioner was notified by Captain Mc-Govern that he was to report to Colonel Walter E. Stone, state police superintendent, at headquarters in Lincoln the following afternoon.

The petitioner testified that at or about 2:45 on the afternoon of July 19 he did report to Colonel Stone as requested. His testimony as to what then transpired is in sharp conflict with that of Colonel Stone. Although petitioner's recollection is hardly credible, it is undisputed that he left with Colonel Stone a typewritten copy of his resignation, requesting that he be placed on the pension roll. Further, he submitted a corrected report of his activities on Saturday evening, relating the details of his trip to Portsmouth.

Colonel Stone testified that he asked petitioner to submit a corrected report at the same time advising him charges were to be preferred, a hearing had and that he, Colonel Stone, intended to see that petitioner was disciplined by reducing him in rank from lieutenant to trooper first grade.

The petitioner denied that any such conversation occurred and further denied, in contradiction of Colonel Stone's testimony, that he requested the right to retire on such terms as Colonel Stone might impose, impliedly waiving any right that he might have to a hearing.

It is also Colonel Stone's testimony that a staff meeting was called by him after petitioner had left and that as a result of such meeting it was decided to reduce petitioner from the rank of lieutenant to that of corporal. The respondents concede that no written notice of his demotion was given to petitioner, but there is conflicting testimony as to whether he was ever orally advised thereof by Captain McGovern.

It does appear that by letter dated July 20, 1960, Colonel Stone officially notified respondent Hill of the retirement of corporal Petrarca, requesting that the latter be placed on the pension roll as of that date.

The record further discloses that petitioner's resignation, requesting that he be retired, effective at once, was signed by him without reference to rank and dated 3:05 p.m., July 19, 1960. Beneath petitioner's signature, also without reference to rank, there appears the following: "Accepted and approved on July 20th, 1960." This is followed by the signature of Walter E. Stone, Colonel and Superintendent.

It is to be observed that in his notice of resignation requesting retirement, petitioner bases his request on the provisions of G. L. 1956, §42-28-22, which read as follows:

"Whenever any member of the state police has served for twenty (20) years, he may retire therefrom, or he may be retired by the superintendent with the approval of the governor, and in either event a sum equal to one-half of the whole remuneration, including the annual salary and any allowance for subsistence, which he is then receiving shall be paid him during life; provided, that no such member shall be entitled to the benefits of this section who, at the time of such retirement, is receiving a pension from this state or from any city or town thereof; and provided, further, that the provisions of this section shall not apply to civilian employees in said Rhode Island state police; and, further, provided that from and after April 27, 1937, chapters 8 to 10, inclusive, of title 36 shall not be construed to apply to said members of the Rhode Island state police."

It is also to be noted that §42-28-11 provides:

"The superintendent shall be the executive and administrative head of the state police, and he is hereby authorized, subject to the approval of the governor, to make rules and regulations not inconsistent with law for the examination and qualifications of applicants for appointment to the state police, for the discipline, control and removal of the other members * * *."

Pursuant to the foregoing authority, rules and regulations

were adopted and approved by the governor and section 4 (a) thereof, in effect July 19, 1960, provided as follows:

"4. Separation of any member from the Department may be by:—

"(a) Resignation, but no separation by resignation shall be effective until the resignation has been accepted in writing by the Superintendent."

Since continued service in the state police results from a succession of three-year terms, §42-28-10, and petitioner, although having served twenty years, had a year left to serve of his seventh such term, it would appear, as respondents contend, that he could not make his retirement effective on the giving of notice thereof. Rather, it would appear that his retirement became effective on July 20, 1960, the day after he allegedly had been reduced to the rank of corporal.

The trial justice was persuaded however that, notwithstanding a continuity of service by a series of three-year enlistments, a member of the state police may retire at will on the completion of twenty years of service by reason of the legislative intention as expressed in §42-28-22. Be that as it may, the trial justice correctly determined that the real issue in the proceedings before him was not whether petitioner had effectively retired, but rather the rank held by him at the time his retirement became effective.

He contends, and the trial justice so held, that demotion as a disciplinary action is quasi judicial in nature by virtue of the pertinent provisions of §42-28-10, which read as follows:

"The superintendent shall appoint the other members of the division authorized by this chapter for terms of three (3) years each, and may remove any member after a hearing, in accordance with the rules and regulations of the division, and no member so removed shall be eligible to reappointment."

In concluding that the action taken by Colonel Stone did not result in reducing petitioner from the rank of lieutenant

to that of corporal, the trial justice relied on the decisions of this court in *Gartsu* v. *Coleman*, 82 R. I. 103, and *Garvin* v. *McCarthy*, 39 R. I. 365. Each of these cases holds that disciplinary action taken by duly constituted authority against a police officer, pursuant to statutory provisions, not unlike those present in the instant cause, is judicial in character, requiring the preferring of charges in writing, notice thereof and an opportunity to be heard thereon.

Applying the rule as thus enunciated to the undisputed facts in the case at bar, the trial justice ruled that there had been no effective demotion of petitioner; that the latter was entitled to the retirement emoluments of a lieutenant; and ordered that the writ issue as prayed for. In our judgment the trial justice was correct and no error inheres in his decision.

Even so, respondents contend that on the more credible version of Colonel Stone petitioner had waived his right to a hearing and could not now be heard to complain that he had been deprived of such right.

The trial justice, pointedly referring both to the superintendent's credibility and the justification for disciplinary action, nevertheless held that no specific charges having been made, petitioner could not be said to have waived that of which he had no knowledge. It is clear from the trial justice's decision that, in his view of the applicable law, the preferring of specific charges, notice thereof and an opportunity to be heard thereon are basic to the validity of such disciplinary action as was taken against petitioner. The latter might, and probably did, waive the opportunity to be heard, but, in the judgment of the trial justice, he could not do so absent notice of specific charges on which the proposed hearing would be held.

In light of the strong legislative intent to surround acquired rights of state police members with judicial safeguards, we are constrained to hold the decision of the trial justice to be correct.

The appeal of the respondents is denied and dismissed, the judgment appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Michael Addeo, Ralph Rotondo,* for petitioner.

*J. Joseph Nugent,* Attorney General, *Edward F. J. Dwyer,* Assistant Attorney General, for State, for respondent.